ELIZABETH C. BROWN *vs.* THOMAS S. BROWN.

First Judicial District, Hartford, January Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The so-called Married Women's Act, which took effect April 20th, 1877 (General Statutes, §§ 4545, 4546, 391, 392), worked a fundamental change in the legal status of husband and wife theretofore existing, and in the civil rights and obligations of each incident thereto. In marriages thereafter contracted the wife retained her own legal identity, which had formerly merged in that of her husband, and as a logical result of that status has the same right to sue her husband for a tort committed upon her person that she has to sue for a like injury committed by any one else.

Such right of action is not opposed to the public policy of this State.

Argued January 7th—decided March 5th, 1914.

ACTION by a wife against her husband to recover damages for causing her to be committed to and detained in a hospital for the insane, although she was alleged to be sane, and for an assault and battery, brought to the Superior Court in Middlesex County where the defendant demurred to the complaint upon the ground of coverture; the court, *Williams, J.*, sustained the demurrer and afterward rendered judgment (*Holcomb, J.*) for the defendant, from which the plaintiff appealed. *Error and cause remanded.*

*Daniel J. Donahoe* and *Bertrand E. Spencer*, for the appellant (plaintiff).

*Frank D. Haines*, for the appellee (defendant).

THAYER, J. The plaintiff by this action seeks to recover damages from her husband for an assault and battery and false imprisonment. The parties were married in October, 1877. If she has a cause of action against her husband it is not questioned that the suit is well brought. The complaint is demurred to, the only ground of demurrer assigned being that by reason of her coverture she has no cause of action against him for the personal injuries alleged in the complaint. The Superior Court sustained the demurrer, and the only question presented by this appeal is whether that ruling was correct.

By the common law the husband might restrain the wife of her liberty and might chastise her. 1 Blackstone's Commentaries, 444. "The law which attached such subjection to the legal status of a married woman has been abolished, but not by direct legislation; it has disappeared under the continuous pressure of judicial interpretation or indirect legislation." *Mathewson* v. *Mathewson*, 79 Conn. 23, 27, 63 Atl. 285. It is now as

unlawful for him to beat or falsely imprison his wife as for another to do so, and he is amenable to the criminal law for such an offense. If another, prior to the recent statutes, committed these offenses against her, he was liable in an action for the injuries inflicted upon her by such torts, but the action had to be brought in the name of her husband and herself jointly, the real purpose of the action being to reduce the chose into the possession of the husband. The wife was joined because, if her husband should die pending the suit, the damages would survive to her. 1 Blackstone's Commentaries, 443; 1 Chitty on Pleading, 64. The common law regarded husband and wife as but one person, and the husband was that person. Being but one person, they could not contract with or sue one another. This resulted logically from the legal identity of husband and wife. If this were the present status of the parties, the plaintiff could have no action for the recovery of damages for the torts alleged.

Chapter 114 of the Public Acts of 1877, p. 211, entitled An Act in Alteration of the Act concerning Domestic Relations, but commonly called the Married Women's Act, established a new legal status for persons thereafter married. It took effect April 20th, 1877, and is embodied in the present revision of the General Statutes. §§ 4545, 4546, 391, 392. The purpose and effect of the Act were in question in *Mathewson* v. *Mathewson*, 79 Conn. 23, 63 Atl. 285. In the opinion, written by JUDGE HAMERSLEY, after a review of the previously-existing law relating to the status of married persons, it is held that "in enacting this law the State adopted a fundamental change of public policy"; that by it "the unity in the husband of his own and his wife's legal identity and capacity to own property, was removed, and a new foundation, namely, equality of husband and wife in legal identity and capacity of

owning property, was laid"; and that since the Act took effect "husband and wife alike retain the capacity of owning, acquiring and disposing of property, which belongs to unmarried persons." In that action a wife had sued her husband for breach of contract. The Act provides that the wife shall have power to make contracts with third persons, and it was claimed that as it in terms gave husband and wife no power to contract with each other, such power was prohibited; but it was held that as the Act "is in the nature of fundamental legislation," it involves "all the results necessarily flowing from the principle established"; that the consequences resulting from the new status established by the Act were not to be prohibited by inference unless such inference is necessary; and that the right of husband and wife to sue each other for breach of contract is one of the consequences of the new status established by the Act.

In *Marri* v. *Stamford Street R. Co.*, 84 Conn. 9, 23, 24, 78 Atl. 582, we held that, as the result of the legal status created by the Act of 1877, the wife may now, by an action in her own name, recover for physical injuries tortiously inflicted upon her as fully and to the same extent as a husband may when he is the person injured, and that the wife's right of recovery for her injuries is exclusive. In that case a husband had been allowed to recover, among other things, for the loss of his wife's services caused by her injuries, and so much of the judgment as allowed him damages for the loss from such injuries was set aside.

By these two cases it is established that a wife, married since April 20th, 1877, may contract with her husband or other person, and may in her own name sue her husband or such other person for breach of such contract; also that she has a cause of action upon which she may recover in a suit brought in her own name for

personal injuries wrongfully inflicted upon her by others
than her husband. If a cause of action in her favor
arises from the wrongful infliction of such injuries upon
her by another, why does not the wrongful infliction of
such injuries by her husband now give her a cause of
action against him? If she may sue him for a broken
promise, why may she not sue him for a broken arm?
The defendant's answer is that a wise public policy for-
bids it, that no right of action accrued to her from such
a tort prior to the statute of 1877, that none is expressly
given her by that statute, and that none can be implied;
and that this is the holding of courts in other jurisdic-
tions in cases which have arisen under similar statutes.

It is true that courts in some of the States have held
that statutes more or less similar to the one here in
question give a married woman no right of action against
her husband for a tort. They find in the statutes con-
strued no legislative intent to change the legal status of
husband and wife as regards the legal identity of the
two, but simply an intent to ameliorate the condition of
the wife by permitting her to retain and deal with her
own property, and to contract with, and sue and be
sued by, others than her husband. These courts gen-
erally hold that unless there is an express provision giv-
ing her the right to sue her husband she has no action
against him upon contract or for tort. It is unnecessary
to review the individual cases. As we said in *Mathewson
v. Mathewson*, 79 Conn. 23, 63 Atl. 285, where an Act
which leaves the foundation of the marriage status un-
changed, and merely provides exceptions to the neces-
sary consequences of that status, such exceptions may
properly be limited by the necessary import of the lan-
guage describing them. If the legislative intent in such
an enactment is not to change the foundation upon
which the status of married persons was based at com-
mon law, namely, their legal identity, but its purpose is

to empower the wife, while that status exists, to contract and sue in her own name like a *feme sole*, it might well be held that language bestowing this right could not be so extended as to permit her to contract with her husband or to sue him for a tort, because the statute intends that her identity shall still be merged in that of her husband. In the two cases above cited we have already held that the legislative intent in the Act of 1877 was to change the foundation of the legal status of husband and wife, and that the statute effects that change. In marriages which have occurred since the Act took effect the parties retain their legal identity, and their civil rights are to be determined in accordance with the status thus established. These rights, except so far as they are modified by the statute itself or by other statutes, or are necessarily affected by the reciprocal rights and obligations which are inherent in the relation of husband and wife, are the same as they were before marriage. The statute leaves nothing to implication. The right to contract with the husband, and to sue him for breach of contract, and to sue for torts, is not given to the wife by the statute. These are rights which belonged to her before marriage, and, because of the new marriage status created by the statute, are not lost by the fact of marriage, as they were under the common-law status. The status of the parties after marriage being fixed, there was no occasion for providing in express terms what the consequences would be. They followed logically.

In the *Mathewson* case we held that a wife's right to contract with the husband, and to sue him for breach of such contract, followed necessarily from the fact, established by the statute, that her legal identity was not lost by her coverture. It is an equally necessary consequence of her retention of her legal identity after coverture, that she has a right of action against her

husband for a tort committed by him against her and resulting in her injury. Such a tort gives rise to a claim for damages. Such claim is property not in her possession, but which she may by action reduce into her possession, just as she might before her coverture have had an action against him for such a tort committed before that event. The husband's delict, whether a breach of contract or personal injury, gives her a cause of action. Both necessarily follow from the fact that a married woman now retains her legal identity and all her property, both that which she possessed at the time of marriage and that acquired afterward.

In the fact that the wife has a cause of action against her husband for wrongful injuries to her person or property committed by him, we see nothing which is injurious to the public, or against the public good, or against good morals. This is the usual test for determining whether a statute or a contract is against public policy. When a wife is allowed to possess and deal with her own property and carry on business in her own name like a *feme sole*, she ought to have the same right to contract and enforce her contracts, and the same remedies for injuries to her person and property, which others have, and to be liable upon her contracts and for her torts the same as others are. This is the position in which she now stands. The danger that the domestic tranquility may be disturbed if husband and wife have rights of action against each other for torts, and that the courts will be filled with actions brought by them against each other for assault, slander and libel, as suggested in some of the cases cited in behalf of the defendant, we think is not serious. So long as there remains to the parties domestic tranquility, while a remnant is left of that affection and respect without which there cannot have been a true marriage, such actions will be impossible. When the purposes of the marriage

relation have wholly failed by reason of the misconduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons. Courts are established and maintained to enforce remedies for every wrong, upon the theory that it is for the public interest that personal differences should thus be adjusted rather than that the parties should be left to settle them according to the law of nature. No greater public inconvenience and scandal can thus arise than would arise if they were left to answer one assault with another and one slander with another slander, until the public peace is broken and the criminal law invoked against them. We find nothing to warrant the claim that public policy is opposed to the existence of a cause of action for a personal tort in favor of husband or wife against the other spouse where the wife's identity is not merged in that of her husband. The plaintiff and defendant having married subsequent to April 20th, 1877, the facts alleged in the complaint were not insufficient by reason of her coverture, and the demurrer should have been overruled.

There is error, the judgment is set aside and the cause remanded for further proceedings according to law.

In this opinion the other judges concurred.