ROSE MESITE *vs.* JOHN F. KIRCHENSTEIN ET AL.

Third Judicial District, Bridgeport, October Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued October 26th, 1928—decided April 17th, 1929.

*Charles S. Hamilton,* with whom, on the brief, was *Morris M. Wilder,* for the appellant (plaintiff).

*Cornelius J. Danaher,* for the appellee (defendant John F. Kirchenstein).

*DeLancey S. Pelgrift,* for the appellee (defendant Teresa Mesite).

WHEELER, C. J. In the consideration of the plaintiff's appeal we must assume that the jury might reasonably have found, in essentials, the following facts, which the finding states the plaintiff offered evidence to prove. The plaintiff was riding in the rear seat of an automobile owned by her mother, the defendant Teresa Mesite, and driven by the husband of her mother with the permission of his wife for the benefit of their family. The automobile was traveling in a westerly direction along Kensington Avenue which intersects Capitol Avenue which runs north and south. The operator of the car in which the plaintiff was riding was proceeding at from fifteen to twenty miles an hour before reaching Capitol Avenue. Upon arriving at the intersection he blew his horn, reduced the speed of his car to five miles an hour, looked to his left, and saw defendant Kirchenstein's car approaching from the south on the left side of Capitol Avenue, thirty-five to forty feet away, at a fast rate of speed. The operator of plaintiff's car upon observ-

ing Kirchenstein's car continued on into and partly across the intersection, applied his brakes and stopped his car within the intersection, with its front wheels against an embankment on the extreme west side of Capitol Avenue and with the rear extending partly across the intersection. The Kirchenstein car continued to approach until its front collided with the left side of the car in which plaintiff was riding, striking it near the windshield after it had come to a standstill, when there was room for it to have passed in the rear of the car in which plaintiff was riding. The plaintiff alleged in her complaint and claimed upon the trial that the cause of the collision was the combined negligence of the operator of the car in which the plaintiff was seated and the operator of the Kirchenstein car.

One of the errors assigned is the submission to the jury of plaintiff's claim as dependent upon their finding that the proximate cause of the accident in which plaintiff suffered the injury for which she seeks damages, was the negligence of Kirchenstein alone, whereas her complaint and claim on the trial was for a recovery based upon the combined negligence of the operators of the Mesite and Kirchenstein cars. Plaintiff's request to charge upon this point included a finding by the jury that the injury to plaintiff occurred either from the combined negligence of the defendants, or from the negligence of either defendant. The court submitted each situation to the jury; it is true that the court's charge emphasized the negligence of either defendant as the proximate cause of the injury to plaintiff more than it did that of the combined negligence of the defendants as such cause, but the latter issue was fairly presented at the conclusion of the court's charge upon this subject and we cannot conclude that the jury did not understand and appreciate

the plaintiff's contentions and the charge upon these points.

Another error is claimed to be the failure to charge in accordance with the statutory rule of the road requiring the operator of a motor vehicle on the highway to keep on the right side. There was no occasion to so charge. *Feehan* v. *Slater,* 89 Conn. 697, 96 Atl. 159. The negligence of Kirchenstein or of Mesite occurred after one or the other reached the intersection. The duty of either so approaching was accurately and sufficiently stated by the court and in conformity to our decisions in *Neumann* v. *Apter,* 95 Conn. 695, 701, 112 Atl. 350; *Jackson* v. *Brown,* 106 Conn. 143, 137 Atl. 725, and *Hall* v. *Root, ante,* p. 33, 145 Atl. 36. The plaintiff's request was deficient in failing to include the statement that the mere violation of these statutory requirements would not constitute actionable negligence unless their violation was the proximate cause of the injury; this omission the court supplied in its charge. *Pietrycka* v. *Simolan,* 98 Conn. 490, 495, 120 Atl. 310; *Lukosevicia* v. *Bartow,* 99 Conn. 723, 726, 122 Atl. 709. The duty of the plaintiff while riding as a guest in the motor vehicle of the defendant Teresa Mesite was presented in accordance with our law; plaintiff's complaint of this is without merit.

None of the claimed errors in the charge are of sufficient consequence to require consideration, except those portions of the charge which instructed the jury that upon the evidence they could not reasonably find that the plaintiff was other than an unemancipated minor child living with her parents and that for an injury suffered by a minor occupying such relationship no action would lie against a parent either at common law or under any statute of this State. In view of this instruction the trial court directed the jury to render a verdict in favor of the defendant Teresa Me-

site, the mother of the plaintiff. The plaintiff requested the court to instruct the jury that "at the time this accident happened the plaintiff was practically emancipated from her parents by earning her own living and paying her board at home, and for all practical purposes was living independent of her parents" and therefore the defendant Mesite would be liable for injuries occurring in consequence of her negligence. The same issues were assumed to be raised in the general demurrer to defendant's first defense. The plaintiff did not raise by her pleadings the issue of emancipation. The court instructed the jury: "No evidence has been offered upon that subject from which it could be fairly and reasonably found that the plaintiff was other than an unemancipated minor." The plaintiff offered evidence to prove: At the time of the accident the plaintiff was sixteen years of age and had always resided with her parents. She left school at fifteen to work in a box factory where, for the nine months preceding the accident, she had earned weekly $12.50, out of which she paid her parents $8 and utilized the balance for the purchase of clothing and for spending money, while at various times her father supplemented her income. Emancipation is the grant by a father, or by the mother if she possesses under the law the rights the father had over the minor by agreement, either written or oral, or by inference from the conduct of the parent, of the right to the minor's services during his minority, as well as to the control, for most purposes, of his person. *Kenure* v. *Brainerd & Armstrong Co.*, 88 Conn. 265, 267, 91 Atl. 185; 1 Schouler on Domestic Relations (6th Ed.) §§ 807-809.

The court was fully justified in its instruction that the plaintiff at the time of her injuries was a minor unemancipated from parental control. That a parent is not liable civilly to his child for personal injury

inflicted during his minority is the rule of law which prevails in every one of the eleven States where this question has arisen. The fact that it has only arisen in eleven States is strong indication of the existence of a common judgment forbidding the allowance of such a recovery. These decisions are: *Hewlett v. George,* 68 Miss. 703, 9 So. 885; *McKelvey v. McKelvey,* 111 Tenn. 388, 77 S. W. 664; *Taubert v. Taubert,* 103 Minn. 247, 114 N. W. 763; *Roller v. Roller,* 37 Wash. 242, 79 Pac. 788; *Small v. Morrison,* 185 N. C. 577, 118 S. E. 12; *Smith v. Smith,* 81 Ind. App. 566, 142 N. E. 128; *Foley v. Foley,* 61 Ill. App. 577; *Ciani v. Ciani,* 215 N. Y. Supp. 767; *Sorrentino v. Sorrentino,* 222 N. Y. App. Div. 835, affirmed, without opinion, 248 N. Y. 626, 162 N. E. 551; *Matarese v. Matarese,* 47 R. I. 131, 131 Atl. 198; *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787; *Mannion v. Mannion* (N. J.) 129 Atl. 431. Two cases are sometimes cited in opposition to this array of authority, *Treschman v. Treschman,* 28 Ind. App. 206, 61 N. E. 961, and *Clasen v. Pruhs,* 69 Neb. 278, 95 N. W. 640. In the first the defendant was the stepmother of the plaintiff minor and did not stand in *loco parentis,* and further the holding of the opinion that the minor might maintain his action for damages against the defendant was manifestly *obiter.* In the second, the action by the plaintiff child was not against a parent but an aunt with whom the minor was temporarily residing. We find only two dissenting opinions, one by Chief Justice Clark in *Small v. Morrison, supra,* and one by Judge Crownhart in *Wick v. Wick, supra.* In *Sorrentino v. Sorrentino, supra,* three of the justices of the Court of Appeals in New York dissented from the decision reached in the Appellate Division, neither the majority nor the minority writing an opinion.

The first of the decisions denying the minor this rem-

edy, rendered in 1891, *Hewlett* v. *George,* 68 Miss. 703, 711, 9 So. 885, grounded its decision upon reasoning which has been adopted by all the later cases. "But," says the court, "so long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." The State and society are vitally interested in the integrity and unity of the family and in the preservation of the family relation. The obligation of the father, or it may be the mother, to care for, guide, control and educate their child, and the reciprocal obligation of the child to serve and obey the parent, are essentials of the family relationship. Authority in the parent to require obedience in the child is indispensable to the maintenance of unity in the family. Anything which undermines this authority, brings discord into the family, weakens its government and disturbs its peace, is an injury to society and to the State. Few things could bring about this unhappy condition more quickly or widen the breach between parent and child further than the bringing of an action at law for personal injuries by a minor child against the parent. Such unseemly family discord is injurious to the public welfare, to such a degree that all the courts of this country, which have had occasion to express their opinion upon the right of the minor to maintain such an action, have declared that the exercise of this right is against sound public policy. To the courts whose uniform rule has been established as the common law of

the country, the danger to society and the State outweighs the personal injury to the minor. He is protected in most cases against the infliction of personal injury at the hands of his parent by the strong and almost universal bond of parental affection. In the extreme cases of aggravated injury the criminal law must be his protection; in other instances of unusual abuse and neglect the State will remove the minor from the parent's control. These remedies will not afford the minor redress for all of the personal injuries he may suffer. Against this stands, in the eyes of the courts, the graver injury to the family unity upon which civil society rests, in whose interest and security the courts have declared a rule of public policy forbidding the maintenance of an action for damages for personal injuries inflicted by the parent upon his child. Since the minor may, through another, sue his parent to recover property rights, it is asked, are the property rights of a minor of more importance to him than the rights of his person? No, but their protection will not disturb the family relation as will the action for personal injuries for every form of negligence as well as for batteries.

It is said that since practically all owners of automobiles protect themselves by insurance against liability for their acts of negligence, why in such cases should the court deny to the minor his right of action against the insurer of his parent? The trial court's answer to this query seems a reasonable one. When compulsory insurance in automobile cases is required, and the legislative enactment provides that recovery can be had directly from an insurer by one injured through the negligence of the insured, the child might recover of the insurer for the negligent injury inflicted by his parent. That is not the action before us.

The suggested analogy between the action by a wife against her husband for personal injuries suffered through his negligence, which we permit, and a like action by a child against his parent is not a close one. We based our decision in *Brown* v. *Brown*, 88 Conn. 42, 89 Atl. 889, upon the Married Women's Act, which took effect April 20th, 1877, under which, as we construed that Act, the wife in marriages thereafter contracted, retained her own legal identity, formerly merged in that of her husband, and the logical result of that changed status gave to her the right to maintain an action against her husband for a tort committed upon her person as she might against a third person who had committed a like tort. *Bushnell* v. *Bushnell*, 103 Conn. 583, 131 Atl. 432. The Act gave the wife a separate and independent legal identity and conferred upon her the same rights arising out of contracts or torts that her husband possessed. She, as the trial court observed, is generally a person of full age, unrelated by blood, and of mature intelligence. The child is related by blood, has no independent legal identity giving him the right to contract or to sue or be sued in his own name and is dependent upon the parent for his care, protection, guidance, control and education during his minority. No statute gives him the right to sue by himself or by another his parent, and no decision or rule of law up to the present time has given him that right.

Considering the situation of the child in its broadest aspects, free from the individual case of injury, the rule of the courts, that the maintenance of an action of tort by a child against his parent for injuries suffered through the negligent, wilful or wanton conduct of the parent is against sound public policy, cannot be

held to be so unwise as to make necessary our departure from it at this late day.

There is no error.

In this opinion the other judges concurred.