LUDWIG SCHNEIDER ET AL. *v.* ANTONIE SCHNEIDER.

[No. 46, October Term, 1930.]

*Decided December 5th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Ogle Marbury,* with whom were *Webster & Tall* on the brief, for the appellants.

*John E. Magers* and *Roszel C. Thomsen,* with whom was *Walter L. Clark* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

Two sons appeal in this case from a judgment recovered against them by their mother, for personal injuries sustained by her while riding in an automobile owned by one son and driven by the other. And the rulings questioned are those of the trial court on prayers for instructions on the liability of each son to the mother.

The important facts of ownership and use of the automobile are undisputed. It had been bought by the father and licensed in the name of the son Ludwig, as owner. The father had paid for it, in part by trading in an automobile which he had previously bought in the name of an older son, now in the navy. The two sons now sued both had drivers' licenses, but the father had none. And he did not often ride in the car. The mother did not ride often, and, when she did,

it was usually Ludwig that drove her. Ludwig used the car to ride to and from his work. Both of the sons sued are unmarried and still live at the home of their parents, paying board. Ludwig is twenty-four years old; James was eighteen at the time of the accident, nineteen at the time of the trial. It is not suggested that James was other than a competent driver. While there might be some question whether the car was not in fact owned by the father, it is doubtful whether the evidence would support a finding that it was, and in the view we take of the case it would not be necessary to consider the possibility. We decide the case, as it was argued, upon the supposition that Ludwig alone was the owner.

The family lived at Curtis Bay, in the extreme southeast of Baltimore. And on the afternoon of Christmas, 1928, the mother, as she said in her testimony, "just decided to see a friend" of hers, a Mrs. Novak, who lived in northeast Baltimore. The father said the visit had been arranged some time before. She asked her son Ludwig to drive herself and her husband there, but Ludwig had a meeting to attend, and said he could not go. And then he asked James to take the parents, and gave James the registration card. James drove the parents and made the visit with them. On the return, late at night, the car collided with another and the mother was injured. She sued the driver of the other car along with her sons, but a verdict was rendered in favor of the third defendant. No question of the legal sufficiency of the evidence to support a finding of negligence on the part of James in driving is raised on appeal, and we need consider only the question whether on the facts stated Ludwig or James Schneider, or both, could in law be held answerable to their mother for injuries caused by negligence of James. We conclude that neither could be so held.

Ludwig Schneider we find not liable because he was neither the driver nor the master of the driver. Mere ownership of a car does not impose liability for injuries caused in the driving of it. Liability, when it exists, is not for the car, but only for the act or omission of the person driving. And when the owner has not himself been the negligent cause of an in-

jury, he can be held liable vicariously only when the negligence has been that of his servant engaged in his affairs. He is not even liable for the negligence of his general servant, his chauffeur, for instance, unless at the time the servant has been conducting the owner's affairs. *Salowitch v. Kres,* 147 Md. 23; *Pollock v. Watts,* 142 Md. 403. And here it is not suggested that James Schneider was a general servant of his brother's; and, in our opinion, the expedition of the parents could not be regarded as an affair of Ludwig's at all. It is settled that the mere fact that it may afford an owner pleasure and satisfaction to have members of his family transported in his car, entirely on their own affairs, does not render their expedition his business, so that he will be liable for the results of negligence in its conduct. *Whitelock v. Dennis,* 139 Md. 557; *Myers v. Shipley,* 140 Md. 380; *Bailary v. Smith,* 140 Md. 437; *Hynes v. Wilson,* 147 Md. 360. Nor can the request by Ludwig of James in this case, that the latter drive their parents on their visit, render the visit or the transportation the business of Ludwig. He merely asked James to accommodate the parents when he, Ludwig, could not do so. James was completely independent of Ludwig, not at all subject to Ludwig's direction, and, indeed, as an infant, was subject to the parental control of his passengers. On the evidence, Ludwig can, in our opinion, be considered only as having lent the car to the parents. Except for the fact that the driver was not, in this instance, even in the general service of the owner, the case is, as respects Ludwig, closely similar to that of *Salowitch v. Kres, supra,* and is disposed of by that case as an authority. And see *Legenbauer v. Esposito,* 187 App. Div. 811, 814, 176 N. Y. Supp. 42. The fourth prayer of the defendants, which was refused, for direction of a verdict in favor of Ludwig Schneider on the ground that James, at the time of the accident, was not the agent, servant or employee of Ludwig, should have been granted.

The obstacle to the mother's recovery against James Schneider is in the fact that she sues a minor son, of whom she, jointly with the father, is the natural guardian. Acts 1929, ch. 561, sec. 1; Code, art. 72A, sec. 1. The ordinary

position of parent and guardian of a minor, and that of plaintiff seeking to recover from the minor, are positions which cannot both be occupied by one person at one and the same time. Maintenance of the suit is inconsistent with the parent's status or office, and the dependence of the minor upon her, and also with the dependence of the law upon her for the fulfilment of necessary legal and social functions. A right of action at law is not one open to any and all persons against any others, without reference to relationships which may exist between them. This court has decided that a wife cannot sue her husband for damages sustained in an automobile accident. *Furstenburg v. Furstenburg,* 152 Md. 247. It appears that a majority of courts in which the question has arisen have decided that a minor child cannot maintain such an action against its parent—a question differing somewhat from the one now decided. *Hewlett v. George,* 68 Miss. 703; *McKelvey v. McKelvey,* 111 Tenn. 388; *Roller v. Roller,* 37 Wash. 242; *Small v. Morrison,* 185 N. C. 577; *Wick v. Wick,* 192 Wis. 260; *Matarese v. Matarese,* 47 R. I. 131; *Sorrentino v. Sorrentino,* 222 App. Div. 171, 226 N. Y. Supp. 907, affirmed 248 N. Y. 626; *Mesite v. Kirchenstein,* 109 Conn. 77, 145 Atl. 753; *Dunlap v. Dunlap* (N. H. 1930), 150 Atl. 905. See study of cases, 43 *Harvard Law Rev.,* 1056 to 1082. It is generally agreed that a guardian, or one standing in place of a parent, cannot sue his ward, because, committed as he is to the care and protection of the ward's interests, going to law with the ward to recover a judgment against him and his property is precluded as inconsistent. "That an action at common law cannot be maintained between a guardian and a ward," said the Supreme Judicial Court of Massachusetts, "is clear. The character of that relation, the capacity in which the guardian acts, the duty to the ward's property, (even if a guardian *ad litem* may be appointed where he is interested), forbid that they should occupy the distinctly adverse position of suitors at common law, especially as to transactions since the guardianship commenced. * * * It is the relation in which the parties have stood to each other, rather than the fact that property

has or has not come to the hands of the guardian, that renders it inconvenient and improper that either should undertake to sue the other at common law." *McLane v. Curran,* 133 Mass. 531. See *Davis v. Davis,* 135 Miss. 214; *Kidd v. Prince* (Texas) 215 S. W. 844; *Davis v. Admrs. of Ford,* 7 Ohio, Pt. 2, 104, 109; *Brown v. Howe,* 9 Gray (Mass.) 84; *Smith v. Dudley,* 16 N. C. 354. And the inconsistency which prevents the maintenance of the suit by a guardian, one *in loco parentis,* would seem at least equally opposed to the maintenance of a suit by a parent. The case of *Kidd v. Prince, supra,* was one of a parent suing a child. A minor is even more dependent upon a parent to provide for him the judgment and care which he, and any property of his, may need during his immaturity. In a suit against him he would ordinarily depend upon his parents to procure him an attorney, for he cannot appoint one. *Wainwright v. Wilkinson,* 62 Md. 146, 147. *Kemp v. Cook,* 18 Md. 130. One of his parents would ordinarily be appointed guardian *ad litem,* he being incapable of defending except by guardian. *Deford v. State,* 30 Md. 179, 199. And even if, in view of the antagonistic position sought to be taken by the parent, another might be appointed guardian *ad litem,* the natural dependence of the child on the parent would inevitably leave him largely subject to the parent's guidance and direction. There would be a question whether the parent would not be obliged to pay the expenses of litigation of the child. And if the child should have property of his own, a parent suing would be in the position of seeking to gain for herself some of that property, while charged with the function of protecting the child's interest in it. *Townshend v. Duncan,* 2 Bland, 45, 51. It seems clear, without citing further difficulties, that, as has been stated, one person cannot at the same time occupy the position of parent and natural guardian, fulfilling the functions devolved upon that position, and the position of plaintiff demanding damages from the child at law. We need not dwell upon the importance of maintaining the family relation free for other reasons from the antagonisms which such suits imply. "Both natural and politic law, morality, and

24

the precepts of revealed religion alike demand the preservation of this relation in its full strength and purity." *Schouler, Domestic Relations,* sec. 223.

Reference has been made in argument to policies or contracts held by one or both of the sons for indemnifying them against loss from recovery of judgment against them, but there is no reference in the record to such policies. They would not be relevant. The suit is not one on a policy, and the possession of a policy by the defendants could not affect the disposition of this case. *International Co. v. Clark,* 147 Md. 34, 42. And see *Lord v. Veazie,* 8 How. (U. S.) 251.

*Judgment reversed as to each appellant, without a new trial, with costs to the appellants.*