EMILY SHAKER, ADMINISTRATRIX, C.T.A. (ESTATE OF JAMES G. SHAKER) *v.* GEORGE SHAKER, ET AL.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, Js.

Argued November 4—decided December 28, 1942.

*William Hanna,* for the appellant (plaintiff).

*J. Kenneth Bradley,* with whom, on the brief, was *William H. Protheroe,* for the appellees (defendants).

INGLIS, J. The plaintiff brought this action to recover damages for the death of her intestate while he was riding in a small truck which, it was claimed, was being operated negligently. The defendants are his unemancipated minor son, George, who was driving the car, and his daughter Josephine, who owned it. Prior to his death, the decedent resided in Bethel with his family, consisting of his wife, his two children named above and another daughter. He owned and conducted a fruit and vegetable market in Bethel. His children Josephine and George worked for him in that business and were subject to his directions in whatever they did in that connection. They, as well as the rest of the family, were supported by him.

The truck in which the decedent was riding at the time of the accident had been bought by Josephine with her own funds and was registered in her name. She had bought it, however, for the decedent, to be used in his business, and it bore the name "Bethel Fruit and Vegetable Market" painted on the outside. The decedent had paid all of the operating expenses of the truck. The defendant George Shaker had general authority to operate the truck for the purposes of his father's business and it was never necessary to obtain his sister's permission before using it.

At the time the accident occurred, the decedent and George were on their way to Waterbury to purchase produce for sale in the father's market. George was driving the truck under the decedent's directions. While they were proceeding down a hill on the main road from Newtown to Sandy Hook, the truck left the road and came in contact with a tree. From that collision the decedent sustained injuries which caused his death. The trial court held, following a ruling made upon a demurrer to the complaint, that no recovery could be had against George because he was the unemancipated son of the decedent.

It must be borne in mind that the Connecticut wrongful death statute, General Statutes, Cum. Sup. 1939, § 1430e, does not create a new and independent cause of action as do Lord Campbell's Act and statutes of some of the states which are patterned after it. For that reason this case is to be distinguished from cases decided under such statutes, such as the second case of *Oliveria* v. *Oliveria*, 305 Mass. 297, 300, 25 N. E. (2d) 766, and *Kaczorowski* v. *Kalkosinski*, 321 Pa. 438, 444, 184 Atl. 663. Under our statute the cause of action sued upon is not a new one created in the personal representative of the decedent or in the next of kin. It is the cause of action which had ac-

crued to the decedent for the wrong done to him and which has survived to his personal representative by reason of the survival statute. *Porpora* v. *New Haven,* 122 Conn. 80, 95, 187 Atl. 668; *Uva* v. *Alonzy,* 116 Conn. 91, 96, 163 Atl. 612; *Davis* v. *Margolis,* 108 Conn. 645, 647, 144 Atl. 665; *Mezzi* v. *Taylor,* 99 Conn. 1, 7, 120 Atl. 871; *Kling* v. *Torello,* 87 Conn. 301, 87 Atl. 987.

In the present case, therefore, the plaintiff as administratrix has no independent cause of action of her own. She stands exactly in the shoes of her intestate. Accordingly, the question on this phase of the case is reduced to this: Did James G. Shaker at the time of his death have a cause of action which he could have maintained against his unemancipated minor son, George, who was also his employee and agent? If he did, then that cause of action has survived to the plaintiff. If he did not have such a cause of action, then this plaintiff has none.

The question is not whether a principal may sue his agent for the latter's negligence. It is of course well established that such a suit may be maintained and that, in such a suit, the agent's negligence is not imputable to the principal so as to constitute contributory negligence. *Donohue* v. *Jette,* 106 Conn. 231, 137 Atl. 724. The question is rather whether it is consonant with public policy to permit a parent to litigate a case against his unemancipated child to recover for personal injuries caused by the child's negligence.

The weight of authority in other jurisdictions supports the position that a parent may not maintain such an action. *Schneider* v. *Schneider,* 160 Md. 18, 21, 152 Atl. 498, 72 A. L. R. 449; *Kidd* v. *Prince,* (Tex. Civ. App.) 215 S. W. 844; *Turner* v. *Carter,* 169 Tenn. 553, 89 S. W. (2d) 751; *Duffy* v. *Duffy,* 117 Pa. Super. 500, 178 Atl. 165; *Kloppenburg* v. *Kloppenburg,* 66 S. D.

167, 280 N. W. 206; *Oliveria* v. *Oliveria,* supra. The only case to the contrary which has come to our attention is *Wells* v. *Wells,* (Mo. App.) 48 S. W. (2d) 109, a decision by the Kansas City Court of Appeals. The argument in those cases which deny the right of a parent to maintain an action for negligence against his unemancipated child rests upon reasons of public policy. The injury to public welfare resulting from the family friction involved in such litigation is held to outweigh the loss caused to the individual parent by his being deprived of damages for whatever injuries to his person he may have suffered from the mere neglect of his child.

In this state we have no case exactly in point. We do have the converse of the question, however, decided in *Mesite* v. *Kirchenstein,* 109 Conn. 77, 145 Atl. 753. In that case we held that it was against public policy to permit an unemancipated minor to maintain an action for negligence against her mother. Concerning that we said (pp. 84, 86): "The State and society are vitally interested in the integrity and unity of the family and in the preservation of the family relation. The obligation of the father, or it may be the mother, to care for, guide, control and educate their child, and the reciprocal obligation of the child to serve and obey the parent, are essentials of the family relationships. Authority in the parent to require obedience in the child is indispensable to the maintenance of unity in the family. Anything which undermines this authority, brings discord into the family, weakens its government and disturbs its peace, is an injury to society and to the State. Few things could bring about this unhappy condition more quickly or widen the breach between parent and child further than the bringing of an action at law for personal injuries by a minor child against the parent. Such unseemly family discord is

injurious to the public welfare, to such a degree that all the courts of this country, which have had occasion to express their opinion upon the right of the minor to maintain such an action, have declared that the exercise of this right is against sound public policy. To the courts whose uniform rule has been established as the common law of the country, the danger to society and the State outweighs the personal injury to the minor. . . . Considering the situation of the child in its broadest aspects, free from the individual case of injury, the rule of the courts, that the maintenance of an action of tort by a child against his parent for injuries suffered through the negligent, wilful or wanton conduct of the parent is against sound public policy, cannot be held to be so unwise as to make necessary our departure from it at this late day."

Most of what we there said concerning the harmful effects to society of litigation for personal injuries resulting from negligence instituted by a child against his parent may be said with equal force concerning such litigation instituted by a parent against his child. Such litigation instituted by a parent is as disruptive of the family relationship as litigation instituted by a child. Moreover, in view of the fact that a parent as the natural guardian of his child is charged with the protection of all of the interests of that child, it is, if anything, more unseemly for the parent to sue the child than for the child to sue the parent.

It has been suggested by the plaintiff here that, in these days when insurance against automobile accidents is so common, the reasons of public policy no longer obtain because the one who has to pay the judgment if one is rendered in favor of a parent is not the child but some insurance company. The fallacy of that is at least twofold. In the first place, every unemancipated child is not insured against liability for

all of his torts and it is hardly feasible to make a rule of public policy depend on the question whether the defendant child is insured. In the second place, ordinarily all that is insured is the liability of the child. The insurer does not become responsible until that liability is established. The insurer is not a party to the action in which the liability is established. That action is against the child and the child must cooperate to defend it. The litigation therefore involves the family friction which is so reprehensible whether the defendant child is insured against liability or not. *Mesite* v. *Kirchenstein,* supra, 85; *Schneider* v. *Schneider,* supra; *Lund* v. *Olson,* 183 Minn. 515, 516, 237 N. W. 188; *Owens* v. *Auto Mutual Indemnity Co.,* 235 Ala. 9, 11, 177 So. 133.

Nor is it pertinent to point out, as the plaintiff does, that this state permits litigation by a wife against her husband for tort. That same suggestion was made in *Mesite* v. *Kirchenstein,* supra, and was disposed of, at page 86, on the ground that such an action by a wife is authorized by statute, the Married Women's Act. *Brown* v. *Brown,* 88 Conn. 42, 89 Atl. 889; *Bushnell* v. *Bushnell,* 103 Conn. 583, 131 Atl. 432.

We conclude that in this state actions brought by a parent against his unemancipated minor child for personal injuries caused by the negligence of the latter are violative of public policy. It follows that inasmuch as the plaintiff here is only the personal representative of a parent and has only such rights as she has derived from him she has no cause of action which she may maintain against his unemancipated child. Indeed, aside from that, it might be pointed out that for an administratrix of a deceased father to litigate an action for personal injuries against an unemancipated son for the benefit of herself and other members of the family is just as disruptive of the family ties as would be an

action brought by the father himself. It is therefore in itself against public policy. Accordingly, the trial court was correct in holding that there was no cause of action against the defendant George Shaker.

We turn now to the cause of action claimed against Josephine Shaker. The trial court found that George was negligent in the operation of the truck and that, upon the basis of the family car doctrine, he was the agent of Josephine, but that George's negligence was imputable to the father because George was also the father's agent and, for that reason, the plaintiff could not recover as against Josephine.

It is not necessary for us to decide whether the trial court was justified on the evidence in finding that George was negligent or in concluding that he was the agent of Josephine. If George was not negligent, or if he was not the agent of Josephine, then of course the plaintiff has no cause of action against Josephine based on her claimed agent's claimed negligence. Assuming that George was negligent and assuming without deciding that he was acting as the agent of Josephine, still the fact remains that he was also the agent of the plaintiff's intestate and was under the latter's control in the operation of the truck. George being the agent of the father, his negligence, occurring in the course of his employment, is imputable to the father as between the father and any third person. *Stiles* v. *Countermash*, 118 Conn. 691, 171 Atl. 509; 45 C. J. 1025, § 578; 38 Am. Jur. 922, § 236. If the injuries of the plaintiff's intestate had been caused by the concurrent negligence of his own agent and someone else who was the agent of Josephine, there could be no question but that the plaintiff would be precluded from recovery because of the contributory negligence of the agent of her intestate imputed to him. The rule is no different where the person whose negligence caused the injuries

was the agent both of the plaintiff's intestate and of Josephine.

It is clear, therefore, that the trial court was correct in concluding that the negligence of George must be imputed to the plaintiff's intestate so as to bar any recovery against the defendant Josephine Shaker.

There is no error.

In this opinion the other judges concurred.