GILES S. WYANT v. JOSEPH E. ANSTETT ET AL.

SUPERIOR COURT          LITCHFIELD COUNTY          FILE NO. 11490

Memorandum filed March 29, 1946.

*Edward F. Sweeney,* of Waterbury, for the Plaintiff.

*Wall & Wall,* of Torrington, for the Defendants.

COMLEY, J. This is an action to recover damages for an assault and battery alleged to have been committed upon the plaintiff at about 1 a. m. on the morning of August 18, 1945, in a tavern in the Bantam section of the town of Litchfield. The defendant Anstett was the owner and operator of the tavern and at the time in question the defendant Groop was acting as his bartender.

Most of the witnesses on both sides tell stories which in part at least are incredible. Putting together the bits of testimony which I accept as true and rejecting the balance, I find the following facts.

This tavern is located in a small industrial community and is patronized largely by workers who live nearby. On the night in question there were boxing matches or "fights" in a hall not far away. These "fights" were over about 11 o'clock, and apparently many of the spectators, including the plaintiff and most of the witnesses in the case, repaired to the tavern. The plaintiff arrived there about a quarter past eleven. He had been drinking before his arrival and was under the influence of liquor. He continued to drink in the tavern, consuming, by his own count, a dozen or fifteen glasses of beer. I do not believe the defendants' statements that they refused to serve him any drinks. From the time of his arrival he was drunk and disorderly and went about the tavern bothering other customers and using vile and abusive language. He nevertheless was permitted to remain in the place until shortly before the 1 o'clock closing hour, at which time the defendant Groop came from behind the bar and punched the plaintiff in the face. The force of the blow—Groop is powerfully built and a former professional boxer—sent the plaintiff backwards against a built-in

booth. Then Groop seized the plaintiff and dragged him out of the tavern door and threw him down on the porch.

Just what led to this assault by Groop is not entirely clear, but the plaintiff had undoubtedly for an hour and three quarters caused Groop a great deal of trouble in the barroom and had used some of his vile and abusive language toward Groop. Immediately prior to the assault the plaintiff had taunted Groop because the latter had not participated in the "fights" held earlier in the evening. It is a fair inference that Groop had been annoyed and irritated by the plaintiff for almost two hours and that when the time for closing had arrived he could contain himself no longer and administered to the plaintiff what probably seemed to him a well-deserved beating. While the punch itself came from a strong man who knew how to use his fists, it does not seem to have caused much damage to the plaintiff's face, but, unfortunately, when he reeled backward against the booth the ninth and twelfth dorsal vertebrae were fractured. As a result he spent three weeks in the hospital and was unable to work for four months. I find that Anstett did not actively participate in the assault.

The foregoing represents the best reconstruction of the occurrence that I have been able to make from a mass of confused and conflicting testimony elicited from a group of witnesses who were hardly calculated to inspire either respect or confidence.

Each of the defendants has filed a general denial. Much of the defendants' testimony was adapted to the defense that they were justified in ejecting the plaintiff from the premises because of his drunken and disorderly conduct. This defense, if properly pleaded and sufficiently proven, would be good, for it is well established that the proprietor of a public or semi-public place of entertainment may use reasonable force in removing a disorderly guest, especially if his conduct is a source of annoyance or danger to other patrons. *Holden* v. *Carraher,* 195 Mass. 392; *Ryan* v. *Marren,* 216 Mass. 556; *Noonan* v. *Luther,* 206 N. Y. 105; see also *Baniulis* v. *Sundik,* 112 Conn. 436. However, it is clear that such a defense must be specially pleaded, since it involves an admission that the assault was in fact committed but that there was justification for it. It obviously involves facts which are consistent with the allegations of the complaint but show, notwithstanding, that the plaintiff has no cause of action. Practice Book, § 104; 4 Am. Jur. 194, and cases cited.

" If the defendants had successfully established this defense, I should hestitate to decide the case without affording them an opportunity to amend their answer, even after the conclusion of the trial. *Mazulis* v. *Zeldner,* 116 Conn. 314.

But even though this defense were properly pleaded, the evidence as I view it would not sustain it for two reasons. In the first place, the plaintiff was in the tavern for about an hour and three quarters before the forcible ejection occurred. During all that time he was noisy and his conduct objectionable, not only to the defendants but to other patrons. Yet he was permitted to remain until a few minutes before 1 o'clock. When the ejection took place, the defendants were about to close the tavern for the night. This is a clear indication that the force used against the plaintiff was not for the purpose of protecting the tavern and its patrons from disturbance by a drunken and unruly guest. On the contrary it leads to the inference that the defendants put up with the plaintiff's conduct until closing time and that Groop then decided to administer what he considered to be well-merited punishment to the plaintiff.

In the second place, the force used by Groop in ejecting the plaintiff was excessive and unreasonable. Assuming that Groop had good cause to remove the plaintiff, he was bound to use no more force than was reasonably necessary under the circumstances. Groop was large and strong and an experienced fighter. The plaintiff was none of these things and, moreover, he was in a stage of drunkenness where he was weak and unsteady. In order to get him out of the place. Groop was not called upon to use his fists as he did.

In view of these considerations, the defendants would profit nothing by an amendment to their answer raising the issue of justification.

The defendant Anstett argues that he cannot be held liable for an assault committed by Groop. This raises two questions: First, was Groop the servant or agent of Anstett? Second, if Groop was the servant or agent of Anstett, was the assault an act for which Anstett could be held responsible?

With reference to the first question, it appears that Groop had at one time been regularly employed by Anstett as a bartender but that this relationship had been terminated some time prior to August 18. On the night in question, Groop had attended the "fights" in the nearby hall and after they were over

he went to the tavern for his own entertainment and refresh-
ment. When he arrived there, he found the place crowded
with so many customers that Anstett was overwhelmed with
business and unable to handle it. Because of his former employ-
ment by Anstett, which had made him thoroughly familiar with
the duties of bartending, and because of a friendly desire to
help Anstett in an hour of need, he volunteered to act as bar-
tender, thus freeing Anstett for service in a separate dining
room adjoining the bar. Anstett gladly accepted the offer and
Groop proceeded to function as regular bartender for the bal-
ance of the evening. Both men deny that any payment or other
form of compensation or reward was involved. Under these
circumstances Groop became the servant or agent of Anstett.
He rendered services for the exclusive benefit of Anstett and
the latter accepted them. Groop himself was not acting in fur-
therance of his own interest or for his own benefit except in
the sense that he was gratifying a desire to be of service to a
friend and a former employer. The situation is markedly differ-
ent from that existing in *Audia* v. *DeAngelis*, 121 Conn. 336,
or in *Card* v. *Bissing*, 114 Conn. 71, upon which Anstett relies,
for in both cases the one who was alleged to be acting in the
capacity of servant or agent of another was engaged primarily
in his own business for his own benefit and only incidentally
in the other's business or for the other's benefit. During the
period that Groop was tending bar he tendered his services as
a servant and Anstett accepted them as master with the all-
important right of direction and control. *Oleksinski* v. *Filip*,
129 Conn. 701. *Shaker* v. *Shaker*, 129 Conn. 518.

This leads to the final quesiton whether the assault committed
by Groop was within the scope of Anstett's business so as to
render Anstett liable. In such situations, "The test is to
be found in the nature of the tortious act and its relation or
nonrelation to that which the actor was employed to do". *Turn-
er* v. *American District Telegraph & Messenger Co.*, 94 Conn.
707, 713. In most cases, this presents a question of fact for
the trier to be determined in the light of all the surrounding
circumstances. *Rappaport* v. *Rosen Film Delivery System, Inc.*,
127 Conn. 524; *Antinozzi* v. *Pepe Co.*, 117 Conn. 11. It seems
to me that if Groop's assault upon the plaintiff had been com-
mitted in an effort to preserve order in Anstett's restaurant or
to protect other customers from annoyance, the relationship be-
tween the assault and Groop's duties as bartender would be so

close that the act might fairly be held to have been within the scope of his employment. *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696.

As indicated above, I do not look upon the facts in this light. Groop's assault was committed just before closing time when the necessity of suppressing the plaintiff in the interest of conducting Anstett's business in an orderly manner had practically disappeared. The assault, coming as and when it did, partook more of a purely personal affair, undertaken by Groop to gratify his personal anger toward the plaintiff because of the annoyance and trouble which the plaintiff had given Groop during the evening and because of the taunts and insults which the plaintiff had directed at Groop. Under these circumstances, the relationship between the assault and the employment was so tenuous that the assault was not within the scope of Anstett's business. *Turner* v. *American District Telegraph & Messenger Co.*, supra, 714.

Judgment is therefore rendered for the defendant Anstett. The plaintiff's medical and hospital bills are $240.54. His loss of wages was $640.00. His own conduct leading up to the assault was such that he should not be awarded exemplary or punitive damages. Judgment is rendered for the plaintiff to recover from the defendant Groop the sum of $2,880.54.