## Candidi v. Candidi

*Wolkin, Sarner & Cooper*, for plaintiff.
*Americo V. Cortese*, for defendant.

CRUMLISH, J., October 31, 1953.—This matter comes before us on defendant's preliminary objections to amended complaint in trespass.

Wife plaintiff is suing husband defendant to recover damages as a result of an alleged assault and battery. By stipulation, the complaint was amended to aver that nearly a year before the alleged assault took place, defendant deserted and abandoned plaintiff and drove her from the home.

The question to be decided is, may a wife bring an action in trespass and recover damages from her husband for an assault and battery committed upon her person by him, after he has deserted, abandoned or driven her from the common home?

Strange as it may seem, the question raised has not been passed upon by our appellate courts. However, in Paskevich v. Paskevich, 5 Northum. 266 (1920), where the facts were identical with those before us, the question was answered in the affirmative.

At common law, husband and wife were considered as one person and he might chastise her. The legal existence of the wife during coverture was merged in that of the husband and generally speaking, the wife was incapable of making contracts, of acquiring or disposing of property without the husband's consent, and they were not liable for torts committed one against the other: 1 Sharwood's Blackstone's Commentaries, Chap. 15. By statutes, the wife has been gradually liberated from these disabilities.

These statutes have been construed strictly as contrary to public policy, in most jurisdictions. For example, in Thompson v. Thompson, 218 U. S. 611, 31 S. Ct. 111, 54 L. Ed. 1180 (1910), a case characterized by Corpus Juris as the leading case on the subject, Justice Day said:

"Apart from the consideration that the perpetration of such atrocious wrongs affords adequate grounds for relief under the statutes of divorce and alimony, this construction would at the same time open the doors of the courts to accusations of all sorts of one spouse

against the other, and bring into public notice complaints for assault, slander and libel, and alleged injuries to property of the one or the other, by husband against wife or wife against husband. Whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it."

In Ritter v. Ritter, 31 Pa. 396, 398 (1858), in holding that a married woman could not, by her next friend, maintain an action of debt against her husband on a contract made during coverture, under the Married Woman's Property Act of 1848, Justice Woodward said:

"One of the favourite maxims of the common law is, that marriage makes the man and woman one person in law, and of course it excludes the possibility of a civil suit between them. . .

"It is doubtless competent for the legislative power to change and modify the qualities of the marriage relation. . .

"Nothing could so complete that severance and degradation, as to throw open litigation to the parties. The maddest advocate for woman's rights, and for the abolition on earth of all divine institutions, could wish for no more decisive blow from the courts than this. The flames which litigation would kindle on the domestic hearth would consume in an instant the conjugal bond, and bring on a new era indeed—an era of universal discord, of unchastity, of bastardy, of dissoluteness, of violence, cruelty, and murders.

"But will the courts expose this fundamental relation to the consequences of unbridled litigation? Never. If it is to be done, it must be by the legislature, and then by no indirection, or inferential consequence, but

by direct, plain, unmistakable English." See also, Smith v. Smith, 14 D. & C. 466 (1930).

On the other side of this picture is the dissenting opinion of Justice Harlan, with which Justices Holmes and Hughes concurred, in Thompson v. Thompson, supra., where it was said:

"If the words used by Congress lead to such a result, and if, as suggested, that result be undesirable on grounds of public policy, it is not within the functions of the court to ward off the dangers feared or the evils threatened simply by a judicial construction that will defeat the plainly-expressed will of the legislative department. With the mere policy, expediency or justice of legislation the courts, in our system of government, have no rightful concern."

In Brown v. Brown, 88 Conn. 42, 89 Atl. 889 (1914), it was said:

"The danger that the domestic tranquillity may be disturbed if husband and wife have rights of action against each other for torts, and that the courts will be filled with actions brought by them against each other for assault, slander and libel, as suggested in some of the cases cited in behalf of the defendant, we think is not serious. So long as there remains to the parties domestic tranquillity, while a remnant is left of that affection and respect without which there cannot have been a true marriage, such actions will be impossible. When the purposes of the marriage relation have wholly failed by reason of the misconduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons."

In Pennsylvania, the pertinent statutes are the Act of June 8, 1893, P. L. 344, sec. 3; March 27, 1913, P. L. 14, sec. 1, 48 PS §111:

"Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property;", And the Act of May 1, 1913, P. L. 146, sec. 1, 48 PS §114:

"From and after the passage of this act, *any wife, who has been deserted, abandoned, or driven from her home by her husband, may sue her husband civilly,* in any court of this Commonwealth having the jurisdiction, upon any cause of action now existing or hereafter accruing, with like effect as if such wife were a feme sole;". (Italics supplied.)

When these two statutory provisions are considered together, the intent of the legislature becomes so clear as to make judicial construction unnecessary. By the Act of 1893 (as amended), the common-law concept of legal merger of husband and wife during coverture has been retained, with the liberalization of that concept to allow one to recover his or her separate property from the other by civil suit. A further liberalization has taken place by the Act of May 1, 1913, permitting a wife to pursue any and all civil relief against her husband, provided she has been "deserted, abandoned, or driven from her home by her husband". In the instant case, by the stipulation amending the complaint, plaintiff wife brings her case within the provisions of this act. At the time of the assault and battery, she was living apart from her husband as the result of his misconduct; and it is alleged that nearly a year previously he "deserted and abandoned the plaintiff and drove her from the house".

When the only remaining vestige of marriage is the legal contract, and the parties thereto have ceased to cohabit as a result of a husband's misconduct, we see

no reason why the marital status, in name only, should exempt a wife-beater from answering in damages for his tortious act. The question of public policy does not lead to a different conclusion. By clear language, the legislature has so defined this right of action that the old-time apprehension that such legislation would open the door to uncontrollable and disastrous litigation between husband and wife has been overcome.

Accordingly, the question is answered in the affirmative.

The preliminary objections are dismissed with leave to file an answer, if defendant deems one necessary, within 20 days from the date hereof.