WILLARD J. OVERLOCK, ADMINISTRATOR (ESTATE OF JAYNE RUEDEMANN), ET AL. *v.* BARBARA A. RUEDEMANN

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued October 11—decided November 8, 1960

*Morgan P. Ames,* for the plaintiffs.

*Richard F. Oburchay,* with whom was *David J. Sullivan, Jr.,* for the defendant.

Baldwin, C. J. This reservation from the Superior Court poses the question whether an unemancipated minor child can be held to respond in damages for negligence which proximately caused injury to one sister and death to another, both being unemancipated minors also.[1] The named plaintiff sues as administrator of the estate of Jayne Ruedemann, the deceased unemancipated minor sister of the defendant. In a second count, Carol Ruedemann, another unemancipated minor sister, sues through her father to recover for personal injuries.

A summary of the facts stipulated is as follows: On October 12, 1958, in the morning, Jayne, aged twelve years, together with Carol, aged fourteen years, and Barbara, aged seventeen years, were going to church in their father's automobile. Barbara was driving. The automobile went out of control and crashed into a utility pole, throwing Jayne through the windshield and causing her death, and injuring Carol. The parties have stipulated that Barbara's negligence in the operation of the automobile was the proximate cause of the death of Jayne and the injury to Carol, neither of whom was chargeable with contributory negligence. It was further stipulated that if a judgment enters in favor of the plaintiff administrator, the damages would be assessed at $11,000, and if a judgment enters in favor of the plaintiff Carol, the damages would be assessed at $1500.

It should be stated at the outset of our discussion that the cause of action asserted by the administra-

---

[1] The questions reserved were: "[a] Does public policy bar an unemancipated minor child from recovering money damages in a civil action from her unemancipated minor sister in the State of Connecticut? [b] Does public policy bar the estate of an unemancipated minor child from recovering money damages in a civil action from her unemancipated minor sister in the State of Connecticut?"

tor for the decedent Jayne is one which accrued to the decedent and has survived to her personal representative by reason of General Statutes § 52-555. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 668, 136 A.2d 918; *Chase* v. *Fitzgerald,* 132 Conn. 461, 467, 45 A.2d 789. A cause of action for wrongful death would be considered, in some jurisdictions, an entirely new and independent cause of action and therefore not within the rule, invoked by analogy by the defendant here, that a parent cannot maintain an action against an unemancipated son or daughter. See *Oliveria* v. *Oliveria,* 305 Mass. 297, 300, 25 N.E.2d 766; Mass. Ann. Laws c. 229, § 2 (Sup. 1959); *Kaczorowski* v. *Kalkosinski,* 321 Pa. 438, 445, 184 A. 663; Pa. Stat. Ann. tit. 12, § 1601 (1953). In this state, the right of action for wrongful death, including ante-mortem elements of damage, and the right of action for nonfatal personal injuries rest on substantially the same basis and can be considered together.

It has long been the law in this state that an unemancipated minor cannot maintain an action for negligence against his parent. *Mesite* v. *Kirchenstein,* 109 Conn. 77, 82, 145 A. 753. He can, however, maintain an action against his parent's employer for the negligence of his parent while acting in the course of his employment. *Chase* v. *New Haven Waste Material Corporation,* 111 Conn. 377, 382, 150 A. 107. In *Shaker* v. *Shaker,* 129 Conn. 518, 521, 29 A.2d 765, we held that a parent cannot maintain an action for negligence against his unemancipated minor child. The reasoning for these holdings can be succinctly stated by quoting from the opinion in the *Mesite* case, supra, 84: "The State and society are vitally interested in the integrity and unity of the family and in the preservation of the family re-

lation. The obligation of the father, or it may be the mother, to care for, guide, control and educate their child, and the reciprocal obligation of the child to serve and obey the parent, are essentials of the family relationship. Authority in the parent to require obedience in the child is indispensable to the maintenance of unity in the family. Anything which undermines this authority, brings discord into the family, weakens its government and disturbs its peace, is an injury to society and to the State. . . . Such unseemly family discord is injurious to the public welfare, to such a degree that all the courts of this country, which have had occasion to express their opinion upon the right of the minor to maintain such an action, have declared that the exercise of this right is against sound public policy." See also *Silverman* v. *Silverman,* 145 Conn. 663, 666, 145 A.2d 826.

Fortified by this reasoning, the defendant argues that public policy forbids the maintenance of the action in the instant case. In *Brown* v. *Brown,* 88 Conn. 42, 47, 89 A. 889, we held that a married woman could recover damages from her husband for an assault committed upon her by him. In *Bushnell* v. *Bushnell,* 103 Conn. 583, 587, 131 A. 432, we allowed a wife to recover damages from her husband for injuries caused her by his negligent operation of his automobile, in which she was a passenger. The defendants in both of these cases argued that the act of 1877; Public Acts 1877, c. 114, § 1, presently General Statutes § 46-9; concerning the property rights of married women should not be construed to allow actions founded on tort between husband and wife. They urged that such a construction would imperil the marriage contract and therefore run contrary to good public policy. See 142 Rec. & Briefs, back of

p. 14; 292 Rec. & Briefs 65. We said in the *Brown* case, supra, 48: "In the fact that the wife has a cause of action against her husband for wrongful injuries to her person or property committed by him, we see nothing which is injurious to the public, or against the public good, or against good morals. This is the usual test for determining whether a statute or a contract is against public policy." In the *Bushnell* case, supra, 587, we said: "Such a situation [the injury of the wife through the ordinary negligence of her husband] falls . . . within the broad principle of liability announced in the *Brown* case. That principle has not been questioned since, and the dangers from it which we then refused to regard as substantial have not in fact made themselves manifest." It is true, as stated in the *Mesite* case, supra, 86, that the decision in the *Brown* case was based upon the interpretation of the 1877 statute. The *Brown* case did, however, present the question whether the maintenance of tort actions between spouses was contrary to public policy. A narrow interpretation of the statute, an interpretation which would have denied a right of action sounding in tort, was urged on grounds of public policy, and the court refused to find that public policy ran contrary to the maintenance of such an action. There would seem to be more force to the argument that a lawsuit between husband and wife is contrary to public policy than that a lawsuit between sisters is. Certainly, in the normal situation at least, a lawsuit between husband and wife might be claimed to strike at the very foundation of family unity. Nevertheless, we have given sanction to such an action.

The defendant here also argues that to allow such an action as the one before us encourages fraud, because the family could benefit from a recovery, for

example, against the insured operator or owner of the family automobile. Courts and juries are frequently called upon to uncover fraud perpetrated in the infinite variety of forms which human ingenuity can devise. There is no reason why they could not as well discover its practice within the family circle. *Midkiff* v. *Midkiff,* 201 Va. 829, 833, 113 S.E.2d 875.

A minor is liable for injuries negligently inflicted by him upon another. *Neal* v. *Gillett,* 23 Conn. 437, 443; 43 C.J.S. 206, § 91; Prosser, Torts (2d Ed.) p. 788; 1 Harper & James, Torts § 8.13. It is true that in determining the negligence of a minor the law applies to him a standard of conduct which will vary according to his age, judgment and experience, but the law does not grant him a complete immunity from liability for his torts, even in negligence. General Statutes § 52-217; *Rappa* v. *Connecticut Co.,* 96 Conn. 285, 286, 114 A. 81; *Colligan* v. *Reilly,* 129 Conn. 26, 29, 26 A.2d 231; *Magaraci* v. *Santa Marie,* 130 Conn. 323, 330, 33 A.2d 424. We see no logic or reason in affording an immunity when the plaintiff and the defendant are unemancipated minor children in the same family. The property rights of one can be enforced in the courts against the other, and an action for that purpose would seem to be no less disruptive of family unity than an action for negligence. The idea that a lawsuit between members of the same family would be disruptive of family unity was created by the courts and became the basis for the common-law rule that such an action is contrary to public policy. See 1 Harper & James, op. cit. § 8.10; Prosser, op. cit., pp. 670-677. But the tendency has been to whittle away the rule by statute and by the process of interpretation, distinction and exception, until we have today a conglomerate of paradoxical and irreconcilable judicial

decisions. Family unity is as essential today as it ever was, but we must face the facts of modern living. Should a member of a family owe a lesser duty with respect to the property rights or personal welfare of another member than he owes to a stranger? And why should not those rights be recognized and those duties enforced in our courts? We find nothing to support the claim that public policy prevents an unemancipated minor from recovering damages for the negligence of his unemancipated minor brother or sister. Recovery in actions of this kind has been allowed in other jurisdictions. *Emery* v. *Emery*, 45 Cal. 2d 421, 432, 289 P.2d 218; *Rozell* v. *Rozell*, 281 N.Y. 106, 114, 22 N.E.2d 254; *Munsert* v. *Farmers Mutual Automobile Ins. Co.*, 229 Wis. 581, 586, 281 N.W. 671; *Midkiff* v. *Midkiff*, supra, 831; see Prosser, op. cit., p. 676; 52 Am. Jur. 439, § 97; note, 123 A.L.R. 1020. In *Bryll* v. *Bryll*, 114 Conn. 668, 159 A. 884, an unemancipated minor sister sued her unemancipated minor brother to recover for the alleged negligence of the brother in operating their father's automobile. In a special defense, the defendant raised the question whether the action could be maintained; the trial court, in ruling on pleadings addressed to this special defense, held that the action could be maintained. A-15 Rec. & Briefs 120. The question was not pursued on appeal.

For the foregoing reasons, actions such as the present one should be allowed in Connecticut.

We answer the questions propounded in the reservation "No."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.