[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: MOTION TO CITE IN PARTYDEFENDANT (#117) AND OBJECTION (#126)
On March 22, 1994, plaintiffs, James Dulude Sr., both in his individual capacity and as Administrator of the Estates of Jennifer and James Jr., Sara Dulude, and Pamela Dulude (plaintiffs), filed a thirty five count complaint against the defendants, Utica Boilers, Inc., (Utica, Inc.), Paul J. Picone (Picone), Home Designing Service Ltd. (Home Designing), John S. Ladany d/b/a Progressive Plumbing (Progressive Plumbing), and Yankee Gas Services Company (Yankee Gas). This case arises out of events occurring on the morning of November 11, 1993, when the plaintiffs were allegedly poisoned by carbon monoxide that was generated by their furnace. The carbon monoxide poisoning resulted in the deaths of two minor CT Page 11566 children (James Jr. and Jennifer) and allegedly caused injury to the surviving family members, James Sr., Pamela, and Sara Dulude.
In counts one through five, each plaintiff separately sets forth a products liability claim against Utica, Inc. Plaintiffs allege the following. Utica, Inc. is a New York Corporation, which transacts business in Connecticut and engages in the business of servicing, selling and distributing furnaces. Utica, Inc. manufactured and sold the furnace that was located in plaintiffs' basement. Plaintiffs' furnace was substantially in the same condition as when it was sold and any modification made to the furnace was in accordance with Utica, Inc.'s instructions or specifications. Pursuant to General Statutes § 52-572m et seq., Utica, Inc. is liable for the loss suffered in that: (1) the furnace was defective and unreasonably dangerous; (2) the furnace lacked proper and adequate warnings and instructions; (3) the furnace lacked proper safety and adequate safety devices to reduce the risk of carbon monoxide poisoning to persons in the home; (4) it failed to adequately specify the ventilation requirements for the furnace; (5) it failed to adequately instruct installers to employ forced air ventilation to ventilate the furnace; (6) it negligently designed and manufactured the furnace; (7) it failed to incorporate a carbon monoxide detector or warn users of the need for a carbon monoxide detector in conjunction with the furnace; and, (8) it failed to warn users of the dangers of carbon monoxide poisoning.
In counts six through ten, each plaintiff separately sets forth a negligence claim against Picone, who plaintiffs allege was an officer and employee of the Conway Development Co., Inc., a dissolved Connecticut corporation. Plaintiffs allege the following in these counts. Conway Development Co., Inc. sold the home, including the furnace and heating system, that was later purchased by plaintiffs. Picone was negligent, in one or more of the following ways: (1) he built the home in a manner that (a) created an unreasonable risk of carbon monoxide poisoning to its inhabitants and (b) caused the use of the upstairs fireplace to draw toxic carbon monoxide from the furnace to the living areas of the house; (2) he built and sold the house (a) with a finished basement, although there was an excessive risk of build-up of carbon monoxide fumes in the basement, (b) without proper and adequate ventilation, (c) without a furnace that would automatically shut off when CT Page 11567 carbon monoxide was drawn back into the house, (d) without a carbon monoxide detector, and (e) failed to provide proper and adequate warning and instructions to the inhabitants of the home regarding the furnace and risk of carbon monoxide poisoning.
In counts eleven through fifteen, each plaintiff separately sets forth a products liability claim against Picone. Plaintiffs allege the following in these counts. Picone was engaged in the selling of homes, including the furnace. Picone sold the subject home. Pursuant to General Statutes § 52-572m, Picone is liable on one or more of the following grounds: (1) the home was defective and unreasonably dangerous to its inhabitants; (2) the home was sold without proper and adequate warnings; (3) the house was built in a manner that carbon monoxide could be drawn back into the living areas of the home; (4) the home lacked the proper and adequate safety devices to reduce the risk of carbon monoxide poisoning to its inhabitants; (5) he failed to provide proper and adequate ventilation for the furnace; (6) he failed to use forced air ventilation to ventilate said furnace; (7) he failed to provide a carbon monoxide detector to warn occupants of any carbon monoxide build-up; and, (8) he failed to adequately warn of the dangers and signs of carbon monoxide poisoning.
In counts sixteen through twenty, each plaintiff separately sets forth a negligence claim against Home Designing, who plaintiffs allege were the architects of the subject home. Plaintiffs allege that Home Designing was negligent in one or more of the following ways: (1) it designed a home that created an unreasonable risk that carbon monoxide would be drawn into the home from the furnace when the upstairs fireplace was in use; (2) it failed to adequately specify that forced air ventilation was necessary; and, (3) it failed to adequately warn those using the plans that there was a risk of carbon monoxide being drawn into the home.
In counts twenty-one through twenty-five, each plaintiff separately sets forth a negligence claim against Progressive Plumbing, who plaintiffs allege installed the furnace. Plaintiffs allege that Progressive Plumbing was negligent in one or more of the following ways: (1) it failed to properly install the furnace; (2) it installed a defective furnace; and, (3) it failed to provide adequate warning of the dangers CT Page 11568 of carbon monoxide poisoning.
In counts twenty-six through thirty, each plaintiff separately sets forth a products liability claim against Progressive Plumbing. Plaintiffs allege that Progressive Plumbing is responsible, pursuant to General Statutes § 52-572m, because the heating equipment sold for use in the home was defective and/or sold without adequate warnings and instructions.
In counts thirty-one through thirty-five, each plaintiff separately sets forth a negligence claim against Yankee Gas, who plaintiffs allege serviced their gas-fired furnace. Plaintiffs allege that Yankee Gas was negligent in that: (1) it failed to give adequate warning about the dangers of carbon monoxide or the need for forced air ventilation or the need for an automatic shutoff safety device; (2) it failed to undertake a proper and adequate advertising campaign to educate gas users of the dangers of carbon monoxide poisoning; and, (3) it continued to supply natural gas to the home, after it should have known of the risk of carbon monoxide poisoning.
There has been filed a motion, with supporting memorandum, to cite in James Dulude, Sr. as a party defendant, claiming that his negligence contributed to the plaintiffs' injuries. Plaintiffs have filed an objection, with supporting memorandum, to the motion to cite.
In the motion to cite, it is argued that pursuant to General Statutes § 52-572h(c), James Dulude Sr. should be made a co-defendant since his negligence must be apportioned with all other parties whose negligent actions were the proximate cause of plaintiffs' injuries and damages. In support of their objection, plaintiffs assert that James Dulude Sr. should not be cited in as a party defendant because the principle of parental immunity, as well as public policy considerations, bar his being made a party defendant in this action.
General Statutes § 52-572h provides in relevant part:
 (c) In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, if the damages are determined to be proximately caused by the CT Page 11569 negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share. . . .
A motion to cite in, pursuant to General Statutes § 52-102, is a proper vehicle to bring in a party for reasons of apportioning liability. See Bueno v. Duva, 7 CSCR 919 (July 9, 1992). General Statutes § 52-102 provides:
 Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy.
(Emphasis added.)
"`Section[s] 52-102 and 52-572h establish a statutory scheme to allow a defendant to have a person named as a co-defendant, even over the objection of the plaintiff, if that person is potentially liable to the plaintiff.'" Ortiz v. Douglas,9 Conn. L. Rptr. 62, 64 (April 29, 1993), quoting Deveau v.Buccheri, 4 Conn. L. Rptr. 280 (1991).
Plaintiff, James Dulude Sr., would be a necessary party to the present action for determining an apportionment of liability under General Statutes § 52-572h and, thus, falls under the general scope of § 52-102. However, § 52-102(2) specifically provides that a person who is immune from liability should not be cited in as a party defendant. Here, the pleadings allege that James Dulude Sr. is the father of the plaintiff minor children and the husband of plaintiff, Pamela Dulude. "The parental immunity doctrine bars an unemancipated minor from suing his or her parent for injuries caused by the negligence of that parent." Dubay v. Irish,207 Conn. 518, 523, 542 A.2d 711 (1988). While the parental immunity doctrine has been abrogated in certain situations[1], it has not been so abrogated in cases involving the negligent care, supervision, or instruction of a child. Id., 527. Therefore, it would appear to the court that James Dulude Sr., CT Page 11570 as the father of the plaintiff minor children, is immune from liability to said children under the law. Accordingly, the motion to cite in James Dulude Sr. as an additional defendant pursuant to General Statutes § 52-102 is properly denied. See, e.g., Ortiz v. Douglas, 9 Conn. L. Rptr., supra at p. 52;Haims v. Omni Fitness Equipment Specialists,8 Conn. L. Rptr. 374
(February 18, 1993) (holding that a defendant's motion to cite in a parent as an additional defendant is barred by the parental immunity doctrine); see also Waddicor v. Bozrah Lightand Power Co., 9 Conn. L. Rptr. 190, 191 (May 28, 1993).
This case differs different from those cases where athird party with potential liability to a plaintiff was made a defendant pursuant to General Statutes § 52-102. In the present case, James Dulude, Sr., the children's parent, and the husband, is already a party plaintiff, both individually and as an administrator of the children's estates.
General Statutes § 52-572h(f) provides, in relevant part:
 The jury or, if there is no jury, the court shall specify . . . the percentage of negligence that proximately caused the injury, death or damage to property in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury [or] death . . . and the percentage of such negligence attributable to the claimant.
Additionally, General Statutes § 52-572h(c) provides that:
 In a negligence action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987; if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . .
Several trial courts have construed these statutory provisions as allowing "the negligence of the parent [to be] considered (provided the parent is a party) when a trier determines the percentages of negligence . . . even though the child cannot recover against the parent because of the parental immunity doctrine." Bueno v. Duva, 7 CSCR supra at p. 910; see also: CT Page 11571Green v. Mancusi, 9 CSCR 117 (January 18, 1994) (granting a motion to strike a counterclaim by defendant against a parent on the basis that as parties to the action the parent's liability will be considered by the jury under General Statutes § 52-572h); Haims v. Omni Fitness EquipmentSpecialists, 8 Conn. L. Rptr. supra at p. 374 (holding that a parent who is already a party does not have to be joined as a party in order to have his percentage of negligence determined under Section 52-572h). James Dulude Sr. is already a party to this action; therefore the trier of fact may consider his negligence in apportioning liability under General Statutes § 52-572h.
Connecticut no longer bars a woman from bringing a tort suit against her husband. See Overlock v. Ruedeman, 147 Conn. 649,165 A.2d 335 (1960). Therefore, it would appear that the defendant could successfully cite in James Dulude Sr. under General Statutes § 52-102 with respect to the suit brought by his wife, since the husband would not be exempted under any immunity doctrine. However, James Dulude Sr. is a party to this action, and as such, his own negligence, if any, may be assessed in determining liability.[2]
For the reasons stated, the motion to cite in James Dulude, Sr. is hereby denied.
Mulcahy, J.