143 N.J. Super. 418 (1976)
363 A.2d 373
NAIOMI DOWER, AS GUARDIAN AD LITEM ON BEHALF OF THE INFANT, GREGORY GOLDSTEIN, PLAINTIFF-RESPONDENT,
v.
GERROLD GOLDSTEIN AND ILONA GOLDSTEIN, DEFENDANTS-APPELLANTS. NAIOMI DOWER, AS GUARDIAN AD LITEM ON BEHALF OF THE INFANT, GREGORY GOLDSTEIN, PLAINTIFF-APPELLANT,
v.
GERROLD GOLDSTEIN AND ILONA GOLDSTEIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1976.
Decided July 13, 1976.
*419 Before Judges CARTON, CRAHAY and HANDLER.
Messrs. Zarin & Maran, attorneys for plaintiff appellant-respondent (Mr. Joseph Maran, Jr. on the brief).
Messrs. Stevens & Mathias, attorneys for defendants respondents-appellants (Mr. Jeffrey K. McKinley on the brief).
*420 The opinion of the court was delivered by CRAHAY, J.A.D.
Gregory Goldstein, when three years old, was bitten and seriously injured by his parents' German Shepherd dog. By his guardian ad litem, (an attorney appointed on the petition of the infant's mother), he filed a complaint for damages against his parents. The parties stipulated the facts and the cause of action was treated in the trial court as one of strict liability, having been brought under N.J.S.A. 4:19-16.[1]
After issue was joined defendants' counsel (engaged by their liability insurance carrier) moved for summary judgment, arguing that the infant's parents were immune from civil liability and that the overruling of parent-child immunity by France v. A.P.A. Transport Corp., 56 N.J. 500 (1970), was limited to automobile negligence actions. Summary judgment was denied and the matter was tried to a jury. A judgment of liability was directed in plaintiff's favor and the jury awarded damages to him in the amount of $4,000. His motion, grounded in an assertion of inadequate damages, for either a new trial or an additur was denied.
In these consolidated appeals defendants argue for a reversal of the judgment on the doctrine of parent-child immunity, and plaintiff presses for a new trial on damages or an additur.
In striking down parent-child immunity, and overruling the line of cases upon which it was built, our Supreme Court in France recounted that the reasons for the grant of immunity (1) varied, and had many exceptions; (2) had been subject to serious criticism, and (3) were on the *421 wane. The possibility of collusion and fraud against the real party in interest, the insurance carrier, seems to have been the last remaining emphatic reason for continuing the immunity grant. The France court did not believe that "this possibility should automatically bar the numerous meritorious claims which arise." France was decided on the same day as Immer v. Risko, 56 N.J. 482 (1970), which overruled interspousal immunity in automobile negligence actions. France, 56 N.J. at 505, reminded that Immer held that the widespread use of liability insurance had attended to other historical reasons for this kind of immunity  (1) disruption of domestic peace and (2) the depletion of a family's financial resources.
The majority of the court in France concluded:
* * * Our decision today goes no further than allowing suits between unemancipated children and their parents for injuries suffered as a result of the negligent operation of a motor vehicle. * * * We realize that there may be areas involving the exercise of parental authority and care over a child which should not be justiciable in a court of law. * * * But we are not confronted with such a situation in this case and we will not speculate on what limits, if any, the rule enunciated here should have. [at 507]
We are satisfied that the cited language, contrary to the argument of appellant, does not limit the abrogation of parent-child immunity to automobile negligence actions.
Albeit in a different factual context, the court has more recently observed in Small v. Rockfeld, 66 N.J. 231 (1974), that
The ultimate holding in France * * * was thus limited to suits for injuries resulting from the negligent operation of automobiles. As in Immer * * * this was done because strictly that was all that was before the Court and the Court was aware that there may still be some special areas in the parent-child relationship, such as customary care and discipline, which may well be dealt with specially as they were in Goller v. White, supra, 20 Wis.2d 402, 122 N.W.2d 192, and Silesky v. Kelman, supra, 281 Minn. 431, 161 N.W.2d 631. See McCurdy, supra, 43 Harv. L. Rev. at 1077-1081. But obviously those special areas are not our present concern since they admittedly have no relation to the alleged parental misconduct set forth in the *422 plaintiff's complaint or the causes of action grounded thereon. The reasoning and tenor of Justice Proctor's opinion in France, as in Immer, leave no room for doubt that he and those who joined him considered the parental immunity to have been terminated in situations, such as the one at hand, where exercise of parental authority and adequacy of child care are admittedly not matters in issue. [at 244; emphasis supplied]
We affirm the trial judge's action in this case which essentially held that the defense of intrafamily immunity not be available in this type action. In so doing, of course, we do not suggest the other types of cases to which immunity should or should not be granted. Here the cause of action was legislatively granted and entitled to liberal interpretation. See Tanga v. Tanga, 94 N.J. Super. 5 (App. Div. 1967), where we expressed our satisfaction that
* * * our Legislature in adopting the statute [N.J.S.A. 4:19-16] contemplated that all dogs, even those ordinarily harmless, have a potential for biting, and that owners should as the social price of keeping them compensate those innocently sustaining injury in that fashion. [at 14]
This record is illustrative of the fact that in "dog bite" cases the possibility of collusion and fraud against insurance companies is minimal. In view of the legislative intent that dog owners will be liable to persons for damages when the injured person is "lawfully on or in a private place, including the property of the owner of the dog," we see no sound reason to deny that recovery on the basis of the litigants' familial relationship.
Lastly, we see no error in the denial to the infant plaintiff either for a new trial or an additur in the damages. The medical expenses, injuries and their sequelae were of a quality as to have supported a higher award. But that is not the test, and we are content that there was no miscarriage of justice in the damage assessment. Dolson v. Anastasia, 55 N.J. 2 (1969). Another jury might have made the quantum of the award considerably higher, but we cannot say that this verdict was not rationally reached *423 on the basis of the evidence. Massotto v. Public Service Coord. Transport, 71 N.J. Super. 39, 56 (App. Div. 1961).
Affirmed.
NOTES
[1] of owner regardless of viciousness of dog.
The owner of any dog which shall bite a person while such person is on or in a public place, or lawfully on or in a private place, including the property of the owner of the dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.