[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this civil action, the plaintiffs are Gary and Darlene Tobin, individually, ["Tobins"] and their minor daughter Jillian Tobin ["Jillian"]. The plaintiffs seek to recover, under various theories, for personal injuries sustained by Jillian allegedly due to exposure to lead-based paint, for their emotional distress and for property damage to the family home. Counts 13 through 16 of the amended complaint, dated October 7, 1992, contain allegations against the defendant Robert J. MacNeil ["MacNeil"] and counts 17 through 22 contain allegations against the defendant Eastern Home Inspection, Inc. ["EHI"].
The essence of the plaintiffs' claims, as alleged in the thirteenth count, is that MacNeil, an inspector of residential structures, acting as an agent, servant, employee or representative of EHI, entered into an agreement with the Tobins on February 17, 1990 to inspect certain residential real estate located in Bridgeport, Connecticut prior to closing and that he negligently failed to warn them of the lead paint contamination which ultimately injured Jillian.
The defendants EHI and MacNeil have filed an amended answer, eighteen special defenses and two counterclaims. The first through sixteenth special defenses and the second counterclaim for contractual indemnification are premised on a written inspection agreement entered into on February 17, 1990. The essence of these claims is that the Tobins entered into a contractual relationship with EHI, a franchisee of AmeriSpec, Inc., for a visual inspection of the premises only. The eighteenth special defense alleges that the Tobins were negligent in various ways. The first counterclaim alleges common law indemnification premised on the Tobins' negligence. The second counterclaim alleges contractual indemnification.
The plaintiffs have moved to strike the first through sixteenth and eighteenth special defenses and the first and second counterclaims on the following grounds: (1) These CT Page 6743 defendants lack standing to raise defenses and counterclaims based on the inspection agreement. (2) The Tobins were not the agents of Jillian and her claims are not barred by the inspection agreement. (3) The special defense premised on negligence is legally insufficient. (4) The defendants' counterclaim based on common law indemnification is legally insufficient. In addition, pursuant to an order of this court,[1] the plaintiff has submitted a supplemental motion to strike the first counterclaim on the ground that it is barred by the doctrine of parental immunity and the parties have briefed this issue.
A motion to strike may be used to contest the legal sufficiency of special defense or a counterclaim. Practice Book § 152. In ruling on a motion to strike, the court must "construe the facts alleged . . . in the light most favorable to the pleader. If facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994). The motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth oraccuracy of opinions stated in the pleadings." (Emphasis in original.) Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985).
I. Standing
The first through sixteenth special defenses ["defenses"] and the second counterclaim ["counterclaim"] incorporate by reference a written "Inspection Agreement" dated February 17, 1990, and signed by the Tobins and MacNeil ["the agreement"]. These defenses and the counterclaim also allege that "[b]y a written contract, dated February 17, 1990 . . . the plaintiffs Gary and Darlene Tobin hired the defendant Eastern Home Inspection, Inc., a franchisee of AmeriSpec, Inc. . . . to preform a visual inspection of the property. . . ." The plaintiffs claim that EHI and MacNeil lack standing to raise these defenses and claims because they are not parties to the agreement. The defendants agree that MacNeil is not a party to the agreement in his personal capacity (Memorandum of Law dated November 12, 1996 p. 13) but claim that EHI is a party and MacNeil is an employee and agent of EHI who may rely on the agreement. The defendants therefore claim that they may raise the agreement's limitations by way of special defense and counterclaim.
"Standing focuses on whether a party is the proper party to CT Page 6744 request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." Nye v. Marcus,198 Conn. 138, 141, 502 A.2d 869 (1985) quoted in Herzog Foundation,Inc. v. University of Bridgeport, 41 Conn. App. 790, 793,677 A.2d 1378, cert. granted, 239 Conn. 907, 682 A.2d 998 (1996). Standing is related to justiciability and has been called a "practical concept" which protects both the court and the parties from litigating nonjusticiable interests. Id., 794. "Thus, standing does not hinge on whether [a party] will ultimately be entitled to relief on the merits of an action, but on whether [a party] is entitled to seek the relief." Id.
There is no doubt that the defenses and second counterclaim raise justiciable disputes. There is an actual controversy among the parties concerning the applicability of the agreement, the parties' interests are adverse, the dispute is capable of adjudication in a judicial forum, and a favorable determination of the dispute could result in practical relief to the defendants. See Nielsen v. State, 236 Conn. 1, 6, 670 A.2d 1288
(1996); State v. Nardini, 187 Conn. 109, 111-12, 445 A.2d 304
(1982).
"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." Grant v.Bassman, 221 Conn. 465, 472-73, 604 A.2d 814.(1992); Practice Book § 164. The challenged defenses do precisely that.
A counterclaim, on the other hand, is an independent action.Home Oil Co. v. Todd, 195 Conn. 333, 341, 487 A.2d 1095 (1985); see Practice Book § 116. Here, the second counterclaim sets forth a cause of action in contractual indemnification arising out of the same home inspection agreement that in part is the subject of the plaintiffs' complaint.
The plaintiffs rely solely upon the agreement's contents and disregard the allegations of the defenses and the counterclaim in setting forth their argument that EHI and MacNeil cannot make claims based on the agreement. The court, however, is required to look at the factual allegations of the challenged pleadings and construe them in a light most favorable to the defendants. The defenses and the second counterclaim allege that "the plaintiffs Gary and Darlene Tobin hired the defendant Eastern Home Inspection, Inc. a franchisee of AmeriSpec, Inc." by way of a written contract dated February 17, 1990, a copy of which is CT Page 6745 attached to the pleading. It is also alleged that "Eastern Home customarily used the AmeriSpec tradename, and did so in the Agreement attached as Exhibit A." The agreement is signed by Robert J. MacNeil "For AmeriSpec, an Independent Franchisee."
It is somewhat disingenuous of the plaintiffs to argue that MacNeil and EHI lack standing to raise the agreement's limitations on the grounds that the agreement was only with AmeriSpec, Inc., when the plaintiffs chose both to sue them, not AmeriSpec, and to rely on the February 17, 1990 agreement, in part, as the basis for their claims of negligence in counts 13 and 14 of the complaint.[2] Moreover, the plaintiffs allege in their complaint that MacNeil was EHI's agent.[3] Indeed, denying the defendants standing to rely on the agreement under these circumstances "would elevate form over substance." State v.Anonymous, 237 Conn. 501, 511, 680 A.2d 956 (1996). The allegations of the first through sixteenth and eighteenth special defenses and second counterclaim, read in the light most favorable to sustaining them, contain facts which, if proven,[4] demonstrate that either EHI or MacNeil is a party to the agreement. Accordingly, the motion to strike the first through sixteenth special defenses and the second counterclaim on the ground of lack of standing is denied.
II. Agency
The plaintiffs have moved to strike the second, fourth, sixth, eighth, tenth, twelfth, fourteenth and sixteenth special defenses on the ground that they fail to allege certain facts material to pleading agency. Each of these special defenses contains an allegation that "[a]t all times relevant hereto, Gary and Darlene Tobin were the parents and agents of Jillian Tobin, duly authorized to act on her behalf." (¶ 1 of the Second Special Defense, incorporated by reference in the fourth, sixth, eighth, tenth, twelfth, fourteenth and sixteenth special defenses). The defendants claim this allegation is sufficient to plead agency.
The plaintiffs correctly point out that the essential elements of an agency relationship are: "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." (Citations omitted; internal quotation marks omitted). Gateway Co. v. DiNoia, 232 Conn. 223, 240, 654 A.2d 342
CT Page 6746 (1995). The plaintiffs suggest that the only factual support for an agency relationship here is the parent-child relationship. They cite the lack of specific allegations regarding, among other things, Jillian Tobin's ability to direct and control the actions of her parents implying interesting questions regarding Jillian's capacity to act as a principal in this case.[5]
Nonetheless, the existence of an agency relationship is generally a question of fact. See West Haven Sound DevelopmentCorp. v. West Haven, 201 Conn. 305, 311, 514 A.2d 734 (1986);Fuessenich v. DiNardo, 195 Conn. 144, 159, 487 A.2d 514 (1985);McLaughlin v. Chicken Delight, Inc., 164 Conn. 317, 323,321 A.2d 456 (1973). Furthermore, the "question of capacity, like other questions concerning the creation of an agency relationship, is a question of fact." Frigon v. Enfield Savings Loan Assn.,195 Conn. 82, 85, 486 A.2d 630 (1985).
Questions of fact are not properly decided on a motion to strike. While the allegations of an agency relationship are minimal in this case, they suffice to survive a motion a strike and it is denied with respect to the second, fourth, sixth, eighth, tenth, twelfth, fourteenth and sixteenth special defenses.
III. Eighteenth Special Defense: Legal Sufficiency
The plaintiffs have moved to strike the eighteenth special defense on the ground that it is legally insufficient. The eighteenth special defense alleges that the Tobins "had a duty of reasonable care in the supervision and protection of their minor daughter Jillian" which they breached by failing to arrange for additional inspections or to take other reasonable steps to discover the presence of lead in the premises before purchasing it or renovating it, exposing Jillian to toxic levels of lead paint, failing to take reasonable precautions during the renovation to prevent or reduce Jillian's exposure to lead paint dust and chips, and failing to supervise Jillian to prevent her from ingesting lead paint. (Eighteenth Defense ¶¶ 12, 13). The plaintiffs assert that "[t]he defendants allege no facts . . . which, taken as true, would demonstrate or support this claimed `negligence.'" (Memorandum of Law dated November 1, 1996, p. 15).
While arguing the general legal insufficiency of the eighteenth special defense, the plaintiffs focused their discussion on the failure to allege specifically that the Tobins CT Page 6747 knew or should have known of a lead hazard at the property and the defendants responded in kind. Nonetheless, the general claim of legal insufficiency requires this court to determine, as a matter of law, whether the eighteenth special defense alleges actionable negligence.
The four elements of negligence are duty, breach, causation and harm. RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381,384, 650 A.2d 153 (1994); Catz v. Rubenstein, 201 Conn. 39, 44,513 A.2d 98 (1986). "There can be no actionable negligence, however, unless there exists a cognizable duty of care. . . . Whether a duty of care exists is a question of law to be decided by the court." (Citations omitted). Waters v. Autori,236 Conn. 820, 826, 676 A.2d 357 (1996).
The eighteenth special defense does not allege that the plaintiffs owed any duty of care to the defendants. Rather, the claim of negligence is premised on the Tobins' alleged "duty of reasonable care in the supervision and protection of their minor daughter Jillian Tobin." However, as discussed in detail below in part IV of this decision, the Tobins are immune from liability for the negligent supervision and protection of their daughter.
Under the doctrine of parental immunity the Tobins could not be found negligent even if all the allegations of the eighteenth special defense were proved at trial. Thus, the eighteenth special defense fails to support a claim of actionable negligence and must be stricken. Moreover, for reasons elaborated on in part IV of this decision, the purposes of the parental immunity doctrine would be defeated if the eighteenth special defense were allowed to stand.
IV. First Counterclaim: Parental Immunity
The first counterclaim, which incorporates paragraphs through 13 of the eighteenth special defense, alleges common law indemnification for "any and all claims made on behalf of Jillian Tobin" premised on allegations that the sole cause of Jillian's injuries was the negligence of the Tobins. The plaintiffs originally moved to strike the first counterclaim on the grounds that it failed to allege sufficient facts to support a claim of active negligence and that it failed to allege an independent duty between the Tobins and the defendants. At the court's request, the plaintiff submitted a supplemental motion to strike the first counterclaim on the ground that it is barred by the CT Page 6748 doctrine of parental immunity. Having concluded that the doctrine of parental immunity bars the first counterclaim, the court will not address the other grounds.[6]
In an action for common law indemnity based on negligence, one tortfeasor seeks to impose total liability upon another tortfeasor. Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694,697, ___ A.2d ___ (1997); Burkert v. Petrol Plus of Naugatuck,Inc., 216 Conn. 65, 74, 579 A.2d 26 (1990); Krytatas v. Stop Shop, Inc., 205 Conn. 694, 697-98, 535 A.2d 357 (1988); Kaplan v.Merberg Wrecking Corp., 152 Conn. 405, 412-16, 207 A.2d 732
(1965). Four separate elements must be alleged to maintain a common law action for indemnity: "(1) that the other tortfeasor [here the Tobins] was negligent; (2) that [the Tobins'] negligence rather than [MacNeil's or EHI's] was the direct, immediate cause of the accident and injuries; (3) that [the Tobins were] in control of the situation to the exclusion of [MacNeil and EHI]; and (4) that [MacNeil and EHI] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the [Tobins] not to be negligent." (Internal quotation marks omitted). Skuzinski v. Bouchard Fuels, Inc.,
supra, 240 Conn. at 698.
To establish the first element, that the Tobins were negligent, the defendants here allege that the Tobins owed Jillian "a duty of reasonable care in the supervision and protection" of her and that they breached that duty by failing to arrange for additional inspections or to take other reasonable steps to discover the presence of lead in the premises before purchasing it or renovating it, exposing Jillian to toxic levels of lead paint, failing to take reasonable precautions during the renovation to prevent or reduce Jillian's exposure to lead paint dust and chips, and failing to supervise Jillian to prevent her from ingesting lead paint. (Eighteenth Defense ¶¶ 12, 13 incorporated in First Counterclaim). The allegations of negligence against the Tobins are framed squarely in terms of negligent parental supervision and protection.
As recently as 1995, the Connecticut Supreme Court affirmed its adherence to the doctrine of parental immunity, particularly when a child claims to have been injured in the family home.Squeglia v. Squeglia, 234 Conn. 259, 661 A.2d 1007 (1995). SeeDubay v. Irish, 207 Conn. 518, 522-28, 542 A.2d 711 (1988). Under Connecticut case law, parents remain immune from liability "in the area of parental supervision and discretion with respect to CT Page 6749 the care and control of a minor child." Squeglia v. Squeglia,
supra, 234 Conn. at 269; Henderson v. Woolley, 230 Conn. 472,480, 644 A.2d 1303 (1994); Dubay v. Irish, supra,207 Conn. at 527; see Norwood v. Gordon, Superior Court, Judicial District of Hartford-New Britain at New Britain, Docket No. 472232 (April 28, 1997, Lager, J.).
Even in jurisdictions where the parental immunity doctrine has been abrogated under most circumstances, immunity has been retained when it is alleged that a parent negligently supervised a child or negligently exercised parental discretion. See, e.g.,Ashley v. Bronson, 189 Mich. App. 498, 473 N.W.2d 757 (1991);Jenkins v. Snohomish County Public Utility Dist. No. 1, 105 Wash.2d 99,713 P.2d 79 (en banc 1986); Wagner v. Smith,340 N.W.2d 255 (Iowa Supreme Court en banc)(1983); Foldi v. Jeffries,93 N.J. 533, 461 A.2d 1145 (1983); Holodook v. Spencer, 36 N.Y.2d 35,364 N.Y.S.2d 859 (1974); see generally Annot., "Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence — Modern Cases," 6 A.L.R.4th 1066 (1981). Furthermore, although the Restatement (Second) of Torts § 895G generally favors abrogation of parental immunity, comment (k) cautions against abrogating parental immunity for acts "involving the exercise of parental authority or supervision . . . [and] the performance of parental duties such as the use of care to provide a safe place to live or adequate necessaries or proper instruction and training." See Henderson v. Woolley, supra,230 Conn. at 481 and n. 15.
While the terms "parental supervision" and "parental discretion" have not been explicitly defined by our appellate courts, in other jurisdictions courts have defined "parental supervision" as the exercise of parental authority in supervising, instructing and disciplining a child while the exercise of "parental discretion" is defined as involving the provision of food, clothing, housing, medical and dental services and other care which a parent is obligated to furnish. Brunner v.Hutchinson Div. Lear-Seigler, Inc., 770 F. Sup. 517, 525 (D.S.D. 1991) (interpreting South Dakota law); Jilani v. Jilani,767 S.W.2d 671, 672-73 (Tex. 1988); Wagner v. Smith, 340 N.W.2d 255
(Iowa 1983) (en banc); Foldi v. Jeffries, 93 N.J. 533,461 A.2d 1145, 1152 (1983); Plumley v. Klein, 388 Mich. 1, 199 N.W.2d 169
(1972).
Parents typically make numerous decisions and take or fail to take numerous actions in the course of managing the affairs of a CT Page 6750 family. Such decisions, actions or, indeed, failures to act can fall within both the categories of parental supervision and parental discretion. In Michigan, for example, its Appellate Court concluded that a decision to purchase and maintain a family pool, and to instruct family members as to its use, "involved an exercise of reasonable parental supervision over the child."McAllister v. Sun Valley Pools, Inc., 100 Mich. App. 498,298 N.W.2d 687, 691 (1980). The same court also determined that maintenance of the swimming pool fell within the ambit of the exercise of parental discretion with respect to the provision of housing. Id. at 691-92. Similarly, a father's decision not only to keep a swimming pool on his property but to build a gate and stairs to the pool, allowing his children access to the pool area, fell within the exercise of reasonable parental discretion regarding the provision of housing to the family. Ashley v.Bronson, 473 N.W.2d 757, 761 (Mich.App. 1991).
Likewise, in Connecticut, a parent's decision to maintain a dog within the home is deemed "an example of parental discretion" while the parent's decision to allow his child to be exposed to the dog "is within the parental supervisory function." Squegliav. Squeglia, supra, 234 Conn. at 269. Similarly, a mother's failure to secure or hide prescription medications that she kept in the family home from her adolescent daughter, who had a psychiatric history which included an earlier suicide attempt, was held to involve "the exercise of ordinary parental discretion and control with respect to the care, supervision and instruction of [the daughter]." Dubay v. Irish, supra, 207 Conn. at 525. "[The] maintenance of the home environment typifies the day-to-day exercise of parental discretion that the state would rather not disrupt." Squeqlia v. Squeqlia, supra,234 Conn. at 269.
The negligence allegations against the Tobins are that they failed to arrange for additional inspections or to take other reasonable steps to discover the presence of lead in the premises before purchasing it or renovating it, exposed Jillian to toxic levels of lead, failed to take reasonable precautions during the renovation to prevent or reduce Jillian's exposure to lead paint dust and chips, and failed to supervise Jillian to prevent her from ingesting lead paint. (Eighteenth Defense ¶¶ 12, 13 incorporated in First Counterclaim). The Tobins' actions and inactions involving the purchase of their family home and its renovation and maintenance fall within the exercise of parental discretion and the Tobins' actions or inactions in supervising CT Page 6751 their minor child within the family home fall within the parental supervisory function, both categories for which they are immune from liability to their daughter under the doctrine of parental immunity.
The court recognizes that our appellate courts have not decided whether the parental immunity doctrine bars common law indemnification claims premised on negligent supervision and protection and that there is a split of authority among the judges of the superior court. Compare e.g. Raffuse v. RollarHomes Inc., Superior Court, judicial district of Middlesex at Middletown, Docket No. 065051 (May 7, 1993, Higgins, J.,8 CSCR 623) and White v. Men-Boz, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 348810 (July 21, 1989, Schaller, J., 4 CSCR 623) (where parental immunity doctrine bars suit by child in direct action for negligent supervision, indemnification claim on same ground must be stricken) with Finley v. Tortora, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 110630 (September 27, 1991, Ryan, J., 5 Conn. L. Rptr. 56, 57-58) (parental immunity does not bar claim against parents of injured child for indemnification based on negligent supervision) andImmick v. Sears, Roebuck Co., Superior Court, judicial district of Danbury, Docket No. 305177 (January 22, 1992, Fuller, J.,5 Conn. L. Rptr. 469) (parental immunity does not bar store owner's counterclaim for indemnification against the parent for negligent supervision). The court concludes, however, that both the purpose of, and the policy underlying, the parental immunity doctrine would be ill-served if the indemnification claim based on the Tobins' negligence towards Jillian were allowed to stand.
In this case, to establish liability for indemnification under the first counterclaim as pleaded, evidence of the Tobins' active parental negligence, otherwise barred by the doctrine of parental immunity, would have to be introduced into the litigation. Thus, the purposes of the parental immunity doctrine — to avoid "injecting `the machinery of the state' into the day-to-day exercise of parental discretion," Squeglia v.Squeglia, supra, 234 Conn. at 265, by second- guessing the parents' management of family affairs — would clearly be defeated if the first counterclaim were allowed to stand. Hribkov. Drubner, Superior Court, judicial district of New Haven at New Haven, Docket No. 352204 (Mar. 11, 1996, Corradino, J) (cross-complaint seeking indemnification from mother stricken on grounds of parental immunity). Accordingly, since the parental CT Page 6752 immunity doctrine bars the defendants' claims premised on negligent parental supervision and the negligent exercise of parental discretion, the first counterclaim is stricken.
The defendants argue that it would be inequitable to deny them the remedy of indemnification by applying the doctrine of parental immunity to the facts of this case. However, the court's conclusion that parental immunity bars the common law indemnification claim does not prevent the defendants from seeking indemnification on other grounds, as they have done in the second counterclaim alleging contractual indemnification.
Conclusion
For the reasons stated above, plaintiffs' motion to strike the eighteenth special defense and the first counterclaim is granted. The motion to strike is denied in all other respects.
LINDA K. LAGER, JUDGE